UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
ANTHONY SMITH,

                Plaintiff,

   — against —

LONG ISLAND UNIVERSITY and
SOUTHAMPTON COLLEGE,

                Defendants.
---------------------------------------------------X

**MEMORANDUM and ORDER**

03 CV 2991 (SLT) (ETB)

**TOWNES, United States District Judge:**

Plaintiff Anthony Smith ("Plaintiff" or "Smith") brings this action against Long Island University and Southampton College ("LIU" or "Defendants") alleging discrimination and retaliation[1] in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), and analogous state law violations under the New York State Human Rights Law. Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56(c). For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

*A. Smith's Work History*

Plaintiff, a dark skinned Native American, was hired as a custodian at LIU's Southampton Campus in 1979. (Dan Gearon Affidavit ("Gearon Aff.") at ¶ 13; Deposition of

---

[1] Plaintiff has cast all of his claims as claims based on Defendants' retaliatory animus. However, at the end of his opposition brief, he states that "a reasonable jury may also determine that the acts described above were motivated, in part, upon plaintiff's race/color/national origin." (Plaintiff's Memorandum in Opposition ("Pl. Opp. Mem.") at 24.) The Court has not found any evidence that would support a claim that Plaintiff was denied promotions or terminated because of his race or color or national origin. Therefore, to the extent that Plaintiff attempts to cast his claims as discrimination claims, they are dismissed.

Anthony Smith ("Smith Dep.") at 28:2-3.) In 1990, Plaintiff filed a complaint against LIU with the New York State Division of Human Rights ("SDHR") alleging racial discrimination ("1990 charge") and then commenced a federal action in 1993 against LIU alleging discrimination based on his color and national origin. (Smith Dep. at 46:25, 47:2-18, 48:15-21.) In January 1996, a trial was held and a jury rendered a verdict in LIU's favor. (Smith Dep. at 48:22-25, 49:2-7.) Throughout the litigation, which spanned over three years, Smith continued to be employed by LIU. (Smith Dep. at 48:8-11.)

On his first day back to work following the trial, Smith was called into the office of Dan Gearon ("Gearon"), Director of the Physical Plant at LIU's Southampton Campus. (Smith Dep. at 60:17-21.) Gearon allegedly told Smith that he was "like the boy who cried wolf" and that he didn't want to hear about any more of Smith's complaints. (Smith Dep. at 60:25, 61:2-3.) Smith also claims that, after the trial, he was occasionally forced to perform his job responsibilities in shorter lengths of time than his similarly situated co-workers. (Smith Dep. at 56:5-25.) Smith said that one of his immediate supervisors, Frank Jones, was responsible for some of these new time restrictions. (Smith Dep. at 56:14-16.)

In February 1997, LIU outsourced its management of custodial employees to LARO Service Systems ("LARO"). (Gearon Aff. at ¶ 16.) According to Plaintiff, Gearon told the custodians that he was tired of their lawsuits, compensation cases and squabbling about promotions, and therefore, they were being outsourced to LARO. (Smith Dep. at 62:10-25.) The custodians were compensated by LARO and all scheduling, including vacation time, was controlled by LARO. (Gearon Aff. at ¶ 21.) LARO also supervised the custodians and directed their job positions and details. (*Id*.) All the custodians at the Southampton Campus were

2

employees of and under the complete control of LARO from February 1997 through September 30, 1998 at which time the contract between LARO and LIU was terminated. (*Id.* at ¶ 22.)

On March 17, 1999, Smith filed another charge of discrimination against LIU with the SDHR (the "1999 charge"). His charge included complaints about not being promoted to a locksmith/carpenter position and a Mechanic Level B position, both in early 1998. He also complained that Mr. Gearon would not meet with him in May 1998 to discuss tuition assistance. Defendants note that all of Plaintiff's allegations in the 1999 charge stem from the time he was employed by LARO. (Gearon Aff. at ¶ 15.) Smith then filed the instant action in June 2003, and filed an Amended Complaint in April 2005.

## B. Smith's Retaliation Claims

In his Amended Complaint, Plaintiff alleges that he was subjected to retaliation for his prior complaints of discrimination. Specifically, he alleges that three positions became available during the period of December 1997 through June 1998 at the Southampton Campus and he was not selected to fill any of those positions because Defendants were retaliating against him for filing the 1990 charge.

### 1. First Position

The first position that Plaintiff claims he was unjustifiably denied was a maintenance mechanic position requiring locksmith and carpenter skills which was previously held by LIU employee Ernie Shoen. (Gearon Aff. at ¶¶ 30, 31.) The maintenance mechanics, who did not belong to the same union as the custodial workers and were never employed by LARO, had three

3

pay levels – B, A and AA – with B being the lowest and AA being the highest. (*Id.* at ¶ 27.) Shoen was leaving his position because he decided to retire. A maintenance mechanic who is at the point of retirement, like Shoen, is usually at the AA level. (*Id.* at ¶ 28.)

Pursuant to the collective bargaining agreement with Local 30, the Maintenance Mechanics Union, LIU was not required to post the locksmith/carpenter opening and accepted no applications for the position. (Gearon Aff. at ¶ 32.) Ron Mazzaferro ("Mazzaferro"), the lead groundskeeper at the time, and also a level AA maintenance mechanic, indicated that he was interested in the position and was transferred into the position. (*Id.* at ¶¶ 33, 36.) This lateral transfer did not alter Mazzaferro's pay scale in any way. (*Id.* at ¶ 36.)

Plaintiff claims he was more qualified than Mazzaferro for this position although he admits he had no formal training in carpentry and locksmith. (Smith Dep. at 98-104.) The totality of his experience in these fields was work he performed on his own house or on relatives' homes, and a few side jobs he did many years ago. (*Id.*)

*2. Second Position*

The transfer of Mazzaferro to Shoen's position left a groundskeeper/maintenance mechanic level B position available. (Gearon Aff. at ¶ 37.) This job was posted on February 10, 1998. (*Id.*; *see also* Gearon Aff., Exh. M.) LIU received numerous applications for this position and interviewed six candidates, including Smith. (Gearon Aff. at ¶ 38.) The position was ultimately awarded to Frank Jones, an African-American, who was at the time, like Smith, also employed by LARO and was functioning as foreman of the custodial workers. (*Id.* at ¶ 39.)

4

Prior to his employment with LARO, Jones was employed as a custodian for LIU. (*Id.*) Jones began working for LIU in 1969, ten years prior to Smith. (*Id.*)

Gearon, who was in charge of hiring for this position, stated that he chose Jones over Smith because Jones performed better in his job interview. (Gearon Aff. at ¶ 43.) He also stated that, while the experience level of Smith and Jones was similar, Jones had proven himself to be a competent, able and reliable worker with a positive working attitude, whereas Smith had at least three documented infractions.[2] (*Id.* at ¶ 40.) In addition, Jones had ten years of seniority over Smith. (*Id.* at ¶ 39.) Gearon states that "when weighing all the above criteria, it was obvious that Frank Jones . . . was a superior candidate." (*Id.* at ¶ 44.) Smith was notified that he was not awarded the position by letter dated April 28, 1998. (*Id.* at ¶ 45; *see also* Gearon Aff., Exh. S.)

*3. Third Position*

A new campus building, Chancellors Hall, was commissioned in Fall 1998. (Gearon Aff. at ¶ 46.) To maintain the building, a new budget line was created for a new position with specific skills, and this position was advertised on June 4, 1998. (*Id.*) The advertisement description was for a "skilled mechanical maintenance worker with extensive expertise in heating, ventilation and air conditioning (HVAC) and modern building controls." (*See* Gearon Aff., Exh. T.) The advertisement said the position would involve other maintenance work such as carpentry, snow removal and plumbing. (*Id.*) Smith never applied for this position. (Gearon Aff. at ¶ 48.)

---

[2] Smith's infractions included a confrontation with the Associate Dean of Students in the cafeteria in 1993 and an altercation in a campus pub in 1995. In addition, in October 1996, another LIU employee felt so threatened by an encounter with Smith that he filed a harassment claim with the campus security department. (Gearon Aff. at ¶ 41; *see also* Gearon Aff., Exh. O.)

5

The position was initially filled by Joseph Reilly, who was then terminated during his probationary period. (Gearon Aff. at ¶ 49.) The interview process was reopened after Reilly's termination but the job was not re-posted. (*Id.*) The job was then awarded to Justin Topping who had prior HVAC, plumbing and carpentry experience. (*Id.* at ¶ 50.)

Smith claims he never applied for this position because Gearon intentionally and falsely claimed that HVAC skill was required of the person who filled the position. (Plaintiff's Memorandum in Opposition ("Pl. Opp. Mem.") at 5.) Smith claims that Gearon hid a carpentry position under the title of an HVAC position in order to preclude him from applying. (*Id.*) As evidence, he points to the fact that Topping did not perform much HVAC work in the position and, instead, mainly performed general maintenance work. (*Id.*; *see also* Deposition of Justin Topping ("Topping Dep.") at 13.)

*C. Smith's Tuition Assistance Claim*

In his 1999 charge, Plaintiff alleged that he was unfairly denied tuition assistance from LIU, but the SDHR issued a No Probable Cause determination on this claim. (*See* Gearon Aff., Exh. X.) Nonetheless, Plaintiff asserts in his complaint that Gearon refused to meet with him in May or June of 1998 in order to discuss tuition assistance and that this was evidence of discrimination or retaliation. Gearon has no recollection of refusing to meet with Smith to discuss tuition assistance. (Gearon Aff. at ¶ 66.) Defendants note that it would have been inappropriate for Gearon to meet with Smith concerning the issue because at the time Smith was an employee of LARO and not LIU. (*Id.* at ¶ 67.) Moreover, during this time period, Howard White, LIU's Director of Personnel and Labor Relations, was working with the custodians'

Union to fashion a tuition assistance program for the custodians. (*Id.* at ¶ 68.) Smith was notified by his Union that LIU would consider his request for tuition assistance, but Smith first had to submit information concerning the type and cost of courses in which he wished to enroll. (*See* Gearon Aff., Exh. Y.) Smith admits in the 1999 charge that he never provided this information to LIU. (*See* Gearon Aff., Exh. E.)

*D. Smith's Termination*

On or about October 29, 1999, Smith sustained a herniated disc while performing his custodial duties. (Gearon Aff. at ¶ 53.) He was unable to perform his job responsibilities due to the injury and began collecting Worker's Compensation. (*Id.*) Plaintiff never returned to work at LIU after his October 1999 injury. (*Id.* at ¶ 54.) He continued to remain on disability leave for over five years. (*Id.* at ¶ 55.)

Plaintiff alleges that after he was injured, he sought to return to work on light duty but his request for a light duty assignment was denied. (Smith Dep. at 169:15-23.) Plaintiff alleges that he applied for a position in Receiving; however, Defendants claim that no such position ever existed. (Gearon Aff. at ¶¶ 60, 61.) According to Defendants, there were no light duty assignments or positions for custodial staff. (*Id.* at ¶ 59.) Under LIU policy, all custodians were expected to perform all of the usual tasks and responsibilities of the custodial position. (*Id.*; *see also*, Gearon Aff., Exh. W.)

After remaining on disability leave for over five years, Smith's employment was eventually terminated on November 1, 2004. Smith's termination was based upon (1) his inability to perform essential functions of his custodial position; and (2) his failure to maintain

membership in the Union as required under the Collective Bargaining Agreement between the Union[3] and LIU. (Affidavit of Lee Kelly[4] ("Kelly Aff.") at ¶ 3.) Union membership and the payment of Union dues was a condition of employment under the collective bargaining agreement. (*Id.* at ¶¶ 5, 6.) In mid-October 2004, Smith's wife contacted LIU inquiring about tuition remission benefits available to Union members and their families and this inquiry led LIU to review Smith's Union status. (*Id.* at ¶ 7, 8.) Smith and his wife were then informed by the Union that Smith had not been a member in good standing since February 23, 2000 and had not paid any Union dues since that time. (*Id.* at ¶ 8, 9.) LIU decided to terminate Smith based on his failure to maintain his Union membership coupled with his excessive leave from work. (*Id.* at ¶ 11.) As provided for in the collective bargaining agreement, LIU received written notification from the Union's attorney that it intended to formally grieve and arbitrate Smith's termination. (*Id.* at ¶12; *see also* Kelly Aff., Exh. CC.)

## DISCUSSION

*A. Standard for Summary Judgment*

---

[3] In October 1999, when Plaintiff began his disability leave, he was a member of Local 840. In 2002, Local 282 assumed representation of the custodians at the Southampton Campus. (Affidavit of Lee Kelly ("Kelly Aff.") at ¶ 5.)

[4] Lee Kelly is the Director of Human Resources for Long Island University.

Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

9

Summary judgment is appropriate in discrimination cases. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). The Supreme Court has reiterated that trial courts "should not 'treat discrimination differently from other ultimate questions of fact.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

*B. Plaintiff's Claims Related to the First Two Positions are Time Barred Under Title VII*

Defendants argue that most of Plaintiffs' allegations are time-barred. To maintain a discrimination action under Title VII, a plaintiff must file a timely charge with the Equal Employment Opportunity Commission ("EEOC") or the equivalent state agency, receive from that agency a right to sue letter, and commence an action within 90 days after receipt of that letter.[5] *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996); *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994). In New York state, where state and local agencies have the authority to investigate claims of discrimination, an administrative charge must be filed within 300 days of the alleged unlawful conduct. *Forsyth v. Federation Employment and Guidance Serv.*, 409 F.3d 565, 572 (2d Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)). As the Supreme Court recently reconfirmed with regard to the timely filing requirements, "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *National R.R. Passenger Corp. v. Morgan*, 536 U.S.

---

[5] Under a Work Sharing Agreement in effect between the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), a charge of discrimination filed with either agency is considered to be constructively cross-filed with the other. *Sundaram v. Brookhaven Nat. Laboratories*, 424 F. Supp. 2d 545, 559 n.6 (E.D.N.Y. 2006).

101, 108, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S. Ct. 2486, 65 L. Ed. 2d 532 (1980)).

In calculating the procedural limitation periods, discrete acts of discrimination or retaliation are deemed to have occurred on the date that they happened. Discrete acts generally are easy to identify and include such things as termination, failure to promote, denial of transfer or refusal to hire. *Morgan,* 536 U.S. at 114. Therefore, a party must file an EEOC charge within 300 days after the complained of act or lose the ability to recover for it. *See id*. at 122.

Mazzaferro's transfer and the denial of the grounds keeping position, both discrete acts that have been characterized by Plaintiff as failures to promote, are identified by Smith in his 1999 charge. However, each incident took place more than 300 days prior to the filing of the charge on March 17, 1999. Mazzaferro's transfer after Shoen's retirement in December 1997 occurred 441 days prior to filing the charge, and Smith received notice that he did not receive the grounds keeping position on April 28, 1998, 324 days prior to filing the charge. Therefore, both of these claims are time-barred.

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Feldman v. Nassau County,* 349 F. Supp. 2d 528, 536 (E.D.N.Y. 2004) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982)). Equitable tolling may, in exceptional circumstances, excuse a failure to follow the filing requirements of Title VII. *See Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985). However, a plaintiff has the burden to show that exceptional circumstances prevented him from filing the EEOC charge in order to apply equitable tolling to

11

the 300-day filing period. *Id.*; *see also Taylor v. Rite Aid Pharmacy,* No. 05-5251, 2006 WL 2806374, at *1 (E.D.N.Y. Sept. 27, 2006). Plaintiff has not met his burden here.[6] Therefore, these claims are time-barred under Title VII and must be dismissed.

*C. The Court Lacks Jurisdiction Over Claims Not Raised in Plaintiff's 1999 Charge*

Defendants argue that Plaintiff's claim regarding his failure to be promoted to the HVAC position should be dismissed because Plaintiff failed to raise it in his 1999 charge. "A district court only has jurisdiction to hear Title VII claims that are either included in an EEOC charge or are based upon subsequent conduct to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Pres. and Dev.*, 990 F.2d 1397 F.2d 1397, 1401 (2d Cir. 1993).

In *Butts*, the Second Circuit described three situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action. First, a claim in a judicial action may be "reasonably related" to a claim in an EEOC charge if the "conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Butts*, 990 F.2d at 1402 (quoting *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 108 n.10 (2d Cir. 1978)). Second, a claim is "reasonably related" to an EEOC charge if plaintiff alleges incidents of discrimination that were carried out in the same manner as those alleged in the charge. *See Butts*, 990 F.2d at 1402-03. Third, an employee's

---

[6] Plaintiff has not presented any evidence as to why equitable tolling, estoppel or waiver should apply. In fact, during oral argument, Plaintiff's counsel admitted that claims related to these two job positions were time-barred under Title VII. (Oral Argument Tr. at 3.) However, he argued that the claims were timely under the New York State Human Rights Law. (*Id.*)

claim of employer retaliation for filing an EEOC charge is deemed "reasonably related" to that charge. *Id.* at 1402.

However, the Second Circuit has been clear that "allegations in [an] EEOC charge [that] are time-barred . . . cannot serve as predicates for allegations in the complaint said to be reasonably related." *Butts*, 990 F.2d at 1403. Therefore, Plaintiff cannot use the first two allegations to "pull in" the third alleged failure to promote claim because those allegations are time-barred. During oral argument, Plaintiff argued that the tuition assistance claim, which was timely, could be used as a predicate for this third failure to promote claim. (Oral Argument Tr. at 7-8.) However, this tuition assistance claim is not "reasonably related" to Plaintiff's allegation that he was denied the promotion to the HVAC position because he is not alleging "essentially the same" acts. *See Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir. 1984). Furthermore, the nature of the claims is significantly different, such that Smith's HVAC claim would not necessarily fall into the scope of an EEOC investigation that originated with Smith's charge of LIU's failure to provide tuition assistance.

However, assuming *arguendo* that the tuition assistance claim could serve as a predicate and "pull in" the third failure to promote claim, this claim would still fail. Smith never applied to the HVAC position, and therefore, he could not establish a prima facie case of discrimination or retaliation based on LIU's failure to promote him. The Second Circuit has made clear that "the second element of a prima facie case cannot be established merely with evidence that a plaintiff generally requested promotion consideration," *Petrosino v. Bell Atlantic,* 385 F.3d 210, 227 (2d Cir. 2004), and has stated that a "specific application [to a position] is required." *Id.*; *see also Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (holding that a failure to

13

apply and be rejected for a specific position is fatal to failure to promote claim). Plaintiff never applied for the HVAC position and has, thus, failed to establish a prima facie case. In addition, Smith has presented absolutely no evidence that would indicate that Gearon purposefully disguised a mechanics position as an HVAC position in order to prevent Smith from submitting an application for the position. The fact that there were few repairs needed to the HVAC system is evidence that the new system was working well; it is not evidence of discrimination or retaliation. Therefore, this claim is dismissed.

*D. Smith's Claim for Wrongful Termination Must Be Dismissed*

Defendants argue that Plaintiff's claim for wrongful termination is premature because Smith has failed to exhaust his administrative remedies under the collective bargaining agreement ("CBA") with his union. Defendants contend that because Plaintiff's union initiated the grievance procedure provided for under the CBA, Smith should not be able to litigate the issue in two forums. Plaintiff argues that his claim is not based on the fact that LIU breached the terms of the CBA when it fired Smith, but rather that his termination was motivated, in part, by retaliation, and that Title VII claims are not precluded by the arbitral process.

The Court finds that Plaintiff's wrongful termination claim would fail, regardless of when Plaintiff pursued it in federal court. In order to make out a prima facie case of retaliatory discharge, Plaintiff must prove that he engaged in a protected activity known to Defendants, he was subjected to adverse employment action, and there is a causal connection between the protected activity and the adverse employment action. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998). A protected activity is any "action taken to protest or oppose

14

statutorily prohibited discrimination," *Cruz v. Coach Stores, Inc.* 202 F.3d 560, 566 (2d Cir. 2000), and would include the filing of Plaintiff's 1999 charge. However, although Plaintiff has satisfied his burden as to the first two elements of a prima facie case, he has not raised any issue of fact concerning the third prong of the test - causal connection. An inference of causation is defeated "(1) if the allegedly retaliatory discharge took place at a temporal remove from the protected activity; or (2) if there was an intervening causal event that occurred between the protected activity and the allegedly retaliatory discharge." *Yarde v. Good Samaritan Hosp.,* 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005); *see also Garrett v. Garden City Hotel, Inc.*, No. 05-0962, 2007 WL 1174891, at *20 (E.D.N.Y. April 19, 2007).

     Plaintiff last worked in October 1999. He filed his SDHR charge in March 1999 and commenced this lawsuit in June 2003. Plaintiff's employment was not terminated until November 1, 2005, over two years later. When assessing retaliation claims, three months is on the outer edge of what courts in this Circuit recognize as sufficiently proximate to raise an inference of causation. *Yarde*, 360 F. Supp. 2d at 562. Therefore, an interval of more than two years between Plaintiff's commencement of this lawsuit and his discharge will not support an inference that Plaintiff was terminated in retaliation for his participation in protected activity. *See Richardson v. N.Y.S. Dep't of Correctional Serv.,* 180 F.3d 426, 447 (2d Cir. 1999) (A "two year gap is too wide to support the inference that [Plaintiff] was terminated in retaliation for complaining about discrimination." ), *abrogated on different grounds, Burlington N. and Santa Fe Ry. Co. v. White,* --- U.S. ---, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); *see also Stroud v. New York City*, 374 F. Supp. 2d 341, 352 (S.D.N.Y. 2005) ("16 months is too remote as a matter of law to support, by itself, an inference of causation."). Plaintiff has provided absolutely no

15

other evidence that LIU terminated him because he complained about discrimination, nor has he provided any evidence that LIU treated other employees in a dissimilar fashion. Accordingly, this claim is dismissed.

*E. Smith's Tuition Assistance Claim*

In his complaint, Plaintiff claims that Gearon's refusal to meet with him to discuss tuition assistance is evidence of discrimination or retaliation. Defendants argue that it would have been inappropriate for Gearon to meet with Smith to discuss tuition assistance because Smith was an employee of LARO during this time period. In addition, Defendants have provided evidence that they were considering tuition assistance for Smith. However, Smith needed to provide certain information to LIU in order for the request to be considered, and Smith failed to do so. Smith has not raised the issue of tuition assistance in his Memorandum in Opposition or supporting papers, nor provided any evidence to support a claim that LIU denied Smith tuition assistance because he participated in protected activities. To the extent Plaintiff is alleging a discrimination or retaliation claim in connection with the tuition assistance issue, it is dismissed.

*F. Smith's Accommodation Claim*

Smith claims that LIU failed to accommodate him after his injury by denying him a light duty assignment in Receiving. However, Defendants have denied that such a position ever existed, and Plaintiff has not produced any evidence that Plaintiff applied for and was denied this position. Furthermore, it was against LIU policy for custodians to work in light duty

assignments. Plaintiff has also not produced any evidence that he was denied the position because he participated in protected activities or that he was treated differently from other similarly situated employees. Therefore, Plaintiff's claim against LIU for a failure to accommodate is dismissed.

*G. Plaintiff's State Law Claims*

Plaintiff has also asserted claims under the New York State Human Rights Law. The decision whether to exercise supplemental jurisdiction is left to the discretion of the district court. *Ametex Fabrics, Inc. v. Just In Materials, Inc*., 140 F.3d 101, 105 (2d Cir. 1998). Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state law claim where, as here, it dismisses all of the federal claims over which it has original jurisdiction. Because none of Smith's disputes with Defendants are cognizable under federal law, this Court declines to exercise supplemental jurisdiction over his state law claims.

**CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED in its entirety and Plaintiff's claims are dismissed. The Clerk of Court is directed to

close this case.

SO ORDERED.

Dated: Brooklyn, New York
May 25, 2007

/s/
SANDRA L. TOWNES
United States District Judge